Marc THIRY, Diane De Fries Thiry, and John D. De Fries Trust, Plaintiffs,

v.

E. Dean CARLSON, Kansas Secretary of Transportation, Kansas State Department of Transportation, City of Basehor, Kansas, City of Tonganoxie, Kansas, and County of Leavenworth, Kansas, Defendants.

United States of America, Intervenor.

Civ. A. No. 94–2425–GTV.

United States District Court,
D. Kansas.

June 9, 1995.

---

Theodore J. Lickteig, Overland Park, KS, Todd M. Richardson, Leawood, KS, for Marc Thiry, Diane De Fries Thiry, John D. De Fries Trust.

Christina L. Morris, Office of U.S. Atty., Kansas City, KS, for U.S.

Vicky S. Johnson, Office of Chief Counsel, Gelene D. Savage, Kansas Dept. of Transp., Topeka, KS, John W. Strahan, Topeka, KS, for Michael L. Johnston.

Vicky S. Johnson, Michael B. Rees, Office of Chief Counsel, Gelene D. Savage, Kansas Dept. of Transp., Topeka, KS, Michael J. Davis, Stinson, Mag & Fizzell, Kansas City, MO, John W. Strahan, Topeka, KS, for Kansas Dept. of Transp., E. Dean Carlson.

Vicky S. Johnson, Michael B. Rees, Office of Chief Counsel, Gelene D. Savage, Kansas Dept. of Transp., Topeka, KS, Michael J. Davis, Stinson, Mag & Fizzell, Kansas City, MO, for City of Basehor, City of Leavenworth, KS.

Vicky S. Johnson, Office of Chief Counsel, Kansas Dept. of Transp., Topeka, KS, Michael J. Davis, Stinson, Mag & Fizzell, Kansas City, MO, for City of Tonganoxie, KS.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This case is before the court on plaintiffs' motion for stay pending appeal, pursuant to Fed.R.Civ.P. 62(c) (Doc. 71). For the rea-

sons set forth in this Memorandum and Order, the motion is granted.

## I. Background

This is an action to enjoin the defendants from condemning certain real estate in Leavenworth County, Kansas, to be used in connection with a highway construction project. Defendant Kansas Department of Transportation (KDOT) offered to purchase the 4.12 acre parcel of land which is part of a larger tract owned by plaintiff John D. De Fries Trust (the Trust) and on which plaintiffs Marc Thiry and Diane De Fries Thiry (the Thirys) reside. The Thirys objected to the project on the grounds that their stillborn baby is buried within the 4.12 acre parcel. The Thirys assert that the gravesite holds spiritual and religious significance for them and is a place of worship and prayer.

In their complaint, the plaintiffs sought to enjoin defendants from commencing condemnation proceedings and from beginning construction of the highway project. Plaintiffs asserted that KDOT's proposed action violated their rights under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb et seq. Plaintiffs also brought their action under 42 U.S.C. § 1983 and claimed that the highway project would violate their rights of free exercise of religion guaranteed by the First Amendment. Plaintiffs' final claim was also brought under § 1983 and alleged that the planned project would deprive the Thirys of their right to family unity and integrity, a liberty interest guaranteed by the Due Process Clause of the Fourteenth Amendment.

The court entered a temporary restraining order on October 28, 1994. After a continuance was granted at defendants' request, the court held a preliminary injunction hearing on December 12–13, 1994. At the conclusion of the hearing, the court granted in part plaintiffs' motion for preliminary injunction and enjoined defendants from taking possession of the property in question and from commencing any construction on the property. Defendants were, however, permitted to initiate eminent domain proceedings.

After a trial to the court on the merits, the court entered a Memorandum and Order containing its findings of fact and conclusions of law on May 8, 1995. The court concluded that plaintiffs had failed to establish their claim for relief and ordered that the preliminary injunction be dissolved. Judgment in favor of the defendants was entered on May 8, 1995. Plaintiffs have filed a notice of appeal and a motion requesting the court to reinstate the preliminary injunction during pendency of the appeal. Defendants oppose the motion and request that plaintiffs be required to post a bond in the amount of $1,507,584.00 if the motion is granted.

## II. Injunction Pending Appeal

Defendants assert that the highway project at issue in this case is scheduled for a February 1996 construction letting. In advance of the letting, condemnation must be completed, construction staking done, and utility lines relocated. Condemnation is scheduled to be completed by June 30, 1995, and construction staking can be completed within 2 to 3 weeks later. KDOT has indicated that it will begin utility relocation immediately thereafter. Utility relocation must be done prior to letting because one of the first activities on the project will require excavation in areas where utilities are currently located. According to KDOT, utility relocation will take at least four months to complete and substantially longer if done during the winter. Utility relocation will effectively destroy the gravesite area. Part of the utility relocation involves the relocation of a fiber optic line which cannot be done piecemeal because of the high cost of splices. Plans call for the fiber optic line to be relocated to a point between 70 and 80 feet north of the gravesite on the Thiry property.

The court has discretion to "suspend, modify, restore, or grant" an injunction during the pendency of an appeal from a judgment granting or denying an injunction. Fed.R.Civ.P. 62(c). In determining whether to restore the preliminary injunction in this case, the court will consider the following factors: (1) the likelihood that plaintiffs will prevail on appeal; (2) the threat of irreparable harm that would be suffered by plaintiffs if the injunction is not granted; (3) the harm that would be suffered by defendants if the injunction is granted; and (4) any harm to the public interest. *See Securities Investor*

*Protection Corp. v. Blinder, Robinson & Co., Inc.,* 962 F.2d 960, 968 (10th Cir.1992); *National Indian Youth Council v. Andrus,* 623 F.2d 694, 695 (10th Cir.1980); *Hellebust v. Brownback,* 824 F.Supp. 1524, 1530 (D.Kan. 1993), *aff'd,* 42 F.3d 1331 (10th Cir.1994); *see also* 10th Cir.R. 8.1 (requiring applicant for stay or injunction to address same factors).

■ The court is unable to find that plaintiffs have a substantial likelihood of success on their appeal. A major component of plaintiffs' case was the contention that the state's action would violate plaintiffs' rights as guaranteed by RFRA, a relatively new statute. While the precise boundaries of RFRA are not yet clearly defined by case law, the court's decision in this case rested on a finding that plaintiffs had not established the threshold requirement of showing that the state's proposed action would "substantially burden" their exercise of religion. The "substantial burden" requirement in RFRA is not new, but rather a concept adopted from the earlier case law. The court believes its ruling in this case necessarily follows from applying the facts to applicable Supreme Court precedent.

While finding that the plaintiffs have not made a strong showing of likelihood of success on the merits, the court also recognizes that this case involves substantial legal questions in an area of the law that continues to evolve. More importantly, plaintiffs have shown that they will be irreparably injured by the lack of an injunction, and that their injury will substantially outweigh that suffered by defendants if an injunction is issued. A number of courts have held that when equitable factors strongly favor interim relief, the court "is not required to find that ultimate success by the movant is a mathematical probability" and "may grant a stay even though its own approach may be contrary to movant's view of the merits." *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *see also Standard Havens Products, Inc. v. Gencor Indus., Inc.,* 897 F.2d 511, 512 (Fed.Cir.1990) ("[L]ikelihood of success in the appeal is not a rigid concept."); *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir.1981) ("[M]ovant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay."); *Providence Journal Co. v. Federal Bureau of Investigation,* 595 F.2d 889, 890 (1st Cir.1979) (If "denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay.").

In this case, a weighing of the relative harm strongly supports granting an injunction pending appeal. If this court does not grant an injunction pending appeal, the gravesite and place of worship will be eliminated, and restoration will likely be impossible. In the event that this court incorrectly denied plaintiffs' action for a permanent injunction, plaintiffs will irretrievably lose rights guaranteed by the First Amendment. "The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *see also Dayton Christian Schools v. Ohio Civil Rights Comm'n,* 604 F.Supp. 101 (S.D. Ohio 1984) (granting injunction pending appeal in case involving alleged violation of rights guaranteed by First Amendment religion clauses), *rev'd on other grounds,* 766 F.2d 932 (6th Cir.1985). Plaintiffs have therefore made a strong showing that they will suffer irreparable harm without an injunction.

If the court grants the requested injunction, it is possible that the defendants will suffer some harm in the form of increased costs to complete the project. While the defendants claim that they will incur substantial losses if an injunction causes delays in the highway project, the court is not persuaded that the damages will be significant. As explained in the discussion of a bond requirement, the defendants' damages are speculative at this point. The court concludes that any losses defendants will suffer as a result of an injunction are not substantial when compared to the potential harm which confronts the plaintiffs.

Finally, the court finds that the public interest will not be adversely affected by issuing an injunction pending appeal. Defendants contend that the public interest will be harmed by delaying the highway project which is part of a state-wide program, authorized by the Kansas Legislature, to upgrade highway safety and promote economic development. The facts show, however, that any additional delay caused by the pendency of this appeal is less than the delays already experienced due to reasons unrelated to this litigation. In addition, the public interest cuts both ways. The public has at least an equal interest in insuring that the rights and values embodied in the Free Exercise Clause of the First Amendment are protected. The legal questions presented in this case, relating to the proper accommodations the state must make when confronted with claimed infringement of religious liberties, are questions of importance to the public. Granting an injunction will provide plaintiffs with an *effective* right to appeal and will assure that a higher court will consider and review these important issues. *See Dayton Christian Schools,* 604 F.Supp. at 104–05.

The court has applied the four factors cited above and concludes that the status quo should be maintained by restoring the preliminary injunction previously entered in this case. Plaintiffs have shown that serious legal questions are presented in this case. Failure to grant an injunction will entirely destroy the rights plaintiffs seek to have protected, and will effectively deny them their right to appellate review. On the other hand, the granting of an injunction will be detrimental to defendants only to the extent that it postpones the start of the highway project by whatever time may be required to hear and decide the appeal. Weighing this latter hardship against the total and immediate divestiture of plaintiffs' rights to have effective appellate review, the court finds that the balance of hardship favors the issuance of an injunction. Finally, on balance the interests of the public will not be adversely affected by the issuance of an injunction.

### III. Bond Requirement

The court has discretion to restore or grant an injunction pending appeal "upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Fed.R.Civ.P. 62(c). Defendants contend that if an injunction is granted and defendants ultimately prevail on appeal, they will have suffered damages in the amount of $1,507,584.00. Defendants argue that plaintiffs should be required to post a bond in that amount if the court grants plaintiffs' motion.

Defendants' calculation of potential damages is based on the premise that the cost of the highway project will increase by 5.2% if the letting date is delayed until the state's next fiscal year, i.e., on or after July 1, 1996. Defendants contend that an injunction would necessarily delay the entire project, and that the current project cost estimate is $28,992,000.00. Applying the 5.2% increased cost factor to the project's estimated cost yields an additional estimated cost of $1,507,584.00.

The court finds that damages in the form of increased costs are at this point speculative. The court has made no finding as to the accuracy of the 5.2% cost factor, but even if that figure is accurate, the court cannot conclude that an injunction pending appeal will necessarily delay letting into the next fiscal year. Defendants are free to request that the Tenth Circuit expedite review of this case, and if expedited review is granted it is unlikely that the appeals process will cause further delays.

Even if the project is delayed into the start of the next fiscal year, it is speculative to attribute that delay solely to the appeal. This project is part of a state-wide highway improvement program enacted by the Kansas Legislature in 1989. The local governments affected by the project first committed funds to help pay for the project in 1989, and entered into an agreement for completion of the project with the Kansas Secretary of Transportation in November 1991. The letting date, now scheduled for over four years after that agreement was entered, has in no way been delayed by the pendency of this litigation or the temporary restraining order and preliminary injunction previously issued

in this case. Even while this suit was pending the scheduled letting date was postponed for reasons unrelated to the litigation.

Finally, defendants bear some responsibility for delays in getting to this point in the litigation. The court twice granted continuances in this case at defendants' request. The preliminary injunction hearing was postponed from November 4, 1994, to December 9, 1994, and finally held on December 14, 1994. The trial originally scheduled to begin January 19, 1995, was also continued at the request of defendants until March 20, 1995.

For these reasons, the court finds that the harm defendants may incur due to the issuance of an injunction pending appeal is sufficiently speculative that plaintiffs will not be required to post bond.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiffs' motion for stay pending appeal (Doc. 71) is granted. The preliminary injunction entered in this case on December 14, 1994, is restored and will remain in effect until disposition of the appeal now pending before the United States Court of Appeals for the Tenth Circuit. Plaintiffs are not required to post bond or other security.

**IT IS SO ORDERED.**